# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 4132 | **DATE** | 3/30/2012 |
| **CASE TITLE** | Nautilus Ins. Co. vs. Squaw Bar, Inc., *et al.* | | |

**DOCKET ENTRY TEXT**

Plaintiff Nautilus Insurance Company's motion for summary judgment [48] against defendants Squaw Bar, Inc. and Bryan Bosack is granted. Defendants' motion for leave to file the previously unfiled declaration is granted.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    This is an insurance coverage case arising out of a bar fight on New Year's Eve. In February 2009, plaintiff Nautilus Insurance Company ("Nautilus") issued a commercial insurance policy to defendant Squaw Bar, Inc. ("Squaw Bar"). The policy was in effect through February 2010. On the night of December 31, 2009, a woman named Heidi Bookman was injured at Squaw Bar when another patron started a fight. Bookman filed a dram shop complaint in state court alleging, among other things, that Squaw Bar and its president, Bryan Bosack, were partly responsible for the injury to Bookman because they negligently allowed unlimited drinking, overserved the patron who started the fight, and failed to provide adequate security. (Case No. 10 L 459 -- Circuit Court of Lake County.)
    Nautilus filed this lawsuit seeking a declaratory judgment that the policy does not cover this lawsuit and therefore Nautilus does not have a duty to defend in the state court action nor a duty to indemnify for any judgment. Nautilus relies on two policy exclusions: (i) the Liquor Liability Exclusion, and (ii) the Assault and Battery Exclusion.
    Now before the Court is Nautilus's motion for summary judgment. In its opening brief, Nautilus argues that the two policy exclusions are plain and unambiguous and both clearly and independently exclude coverage for the allegations made in the Bookman lawsuit.
    Defendants Squaw Bar and Bosack filed a four-page response brief in which they assert one major argument. Before addressing it, we need to deal with a preliminary procedural issue. Defendants' response brief relies on and quotes from a declaration of Bryan Bosack. Although the response brief states that the declaration is attached, it was not in fact attached. Nautilus filed its reply brief without seeing a copy of the unedited declaration. As this Court was beginning its review of the briefs, defendants filed a motion for leave to file the previously unfiled declaration. Each side then filed a short brief. We will grant the motion and allow the filing of the declaration because we agree with defendants that there is no prejudice given that the response brief summarized accurately the relevant portions of the declaration.

# STATEMENT

Turning to the substantive argument, defendants begin their response brief by summarizing what they believe is the key issue this Court must address: "The central and sole issue in this matter is whether the Plaintiff can rely on its exclusionary language that is contained in this policy of comprehensive liability insurance (CGL) in order to avoid providing coverage to Squaw Bar for the loss alleged by Heidi Bookman." (Defs. Resp. at 1.) This description could be shortened to a more generic form: "Should this Court enforce the plain language of the parties' contract?" When phrased this way, we can see that defendants are fighting an uphill battle from the start.

Looking more closely at the argument, it contains three interrelated parts. The first and most important part is defendants' assertion that the policy is illusory. They argue that the two policy exclusions are so broad that they take away all coverage, and therefore the overall policy is unenforceable. As an initial point, it should be noted that in making this argument defendants implicitly concede that the plain language of the policy, if applied in straightforward way to the facts here, unequivocally precludes insurance coverage. The second part of defendants' argument is to ask this Court to apply the "reasonable expectations" doctrine which holds that if the policy is illusory, a court can then essentially rewrite the policy to fulfill the insured's reasonable expectations. The third step concerns the reasonable expectations of Squaw Bar. This is where the declaration of Bosack comes in. He was the president of Squaw Bar and was responsible for purchasing insurance for the company. (Decl. ¶ 3.) He was "under the impression" from the amount of the annual premium for the policy, which went up from $5,000 to $9,000 from 2008 to 2010, that the policy would cover all injuries sustained by Squaw Bar patrons. (¶¶ 5-7.) He is not an attorney, has no training in how to interpret insurance policies, and was "unaware of the exclusions" now at issue in this lawsuit. (¶¶ 8-9.) He also states that the phrase "assault and battery" has a different meaning to him than it does to Nautilus. (¶ 10.) He concludes by stating that he believed this policy would protect Squaw Bar "from potential liability in the event that a customer was injured, for any reason, while on the premises." (¶ 11.)

As support for this general argument, defendants cite to four cases. Three of them provide little concrete guidance because they involve different factual situations and legal issues and because (in two of the three cases) the court *rejected* the argument that the policy was illusory. In *Frendreis v. Blue Cross Blue Shield of Michigan*, 873 F.Supp. 1153 (N.D. Ill. 1995), a woman with life-threatening breast cancer argued that a new form of chemotherapy was not "experimental" and therefore not barred under an exclusion for experimental procedures. *Id.* at 1156. The court held that the term "experimental" was ambiguous and that reasonable minds could differ on whether the proposed chemotherapy treatment was covered. *Id.* at 1157. In the course of interpreting this ambiguous term, the court noted generally (and this is the part defendants here quote in their brief) that "[j]udges need not check their common sense at the door when interpreting insurance contracts." *Id.* Unlike the present case, where the policy language is unequivocal, *Frendreis* involved a legitimate ambiguity which then opened the door for the court to use context and common sense to choose between two reasonable interpretations. The second case defendants rely on is *Neighborhood Housing Services of Am., Inc. v. Turner-Ridley*, 742 F.Supp.2d 964 (N.D. Ind. 2010), which involved a commercial policy issued to a not-for-profit corporation providing mortgage services for low-income families. The court held that an exclusion for "professional services" was not ambiguous and therefore was enforceable. The court rejected an argument that the policy was illusory under Indiana law because the policy, while excluding some coverage, did not exclude all coverage. *Id.* at 972-73. Similarly, defendants' third case also ruled in favor of the insurance company and rejected the argument defendants are making here. *Fidelity and Guaranty Ins. Underwriters v. Everett I. Brown Co.*, 25 F.3d 484 (7th Cir. 1994) (affirming summary judgment in favor of the insurer and rejecting the argument that the policy was illusory because it was "obvious" the policy covered some circumstances, although not all of them).

We turn then to defendants' fourth case -- *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F.Supp. 694 (S.D. Ind. 1996) -- which is really the linchpin of defendants' argument. Defendants in their response brief quote several long passages from this opinion, and they model their argument on the one made by the insured therein. Unlike the first three cases, *Monticello* addresses similar facts and legal issues. A

tavern was sued in state court for serving alcohol to a visibly intoxicated patron who later killed another patron in an adjacent parking lot. *Id.* at 696. The tavern had a general liability policy with exclusions for assault and battery and for alcohol (actually, it had two different alcohol exclusions). Applying Indiana law and the doctrine of "reasonable expectations," the court found that the policy was illusory because one of the two alcohol exclusions would apply to "virtually any claim" the insured might reasonably be expected to file. *Id.* at 702.

Although *Monticello* is factually similar, we find that it differs in two important respects. First, the *Monticello* court construed Indiana insurance law, noting that Indiana courts have "often" applied the "reasonable expectations" doctrine to benefit insureds. *Id.* at 699. The present case involves Illinois law. In contrast to Indiana courts, Illinois courts have rejected requests to apply the "reasonable expectations" doctrine. *See Zurich Ins. Co. v Northbrook Excess and Surplus Ins.*, 494 N.E.2d 634, 645 (Ill. App. Ct. 1986) (citing cases and stating: "The 'reasonable expectations' doctrine is not recognized in Illinois."). Defendants ask that we apply this doctrine, but they supply us with no Illinois case law or legal authority to authorize such an approach.

Second, the specific alcohol exclusion found illusory in *Monticello* was broader than the exclusion here. As noted above, the policy there contained two exclusions, a broader and a more narrow one. The opinion focused mostly on the broader one. It excluded any claim "arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages." 949 F.Supp. at 696. The *Monticello* court was particularly concerned about the "in connection with" language, believing it excluded claims where the injury was not caused by a patron being served too much alcohol. One example the court gave was a situation in which the tavern failed to remove ice on the sidewalk and a passerby slipped and fell. *Id.* at 701. Even though this accident was not caused by the serving of alcohol, it arguably was connected in some loose sense with the larger business of selling alcohol. For this reason, the court found the entire policy illusory. Here, the alcohol exclusion is narrower. It applies to injuries by reason of "(1) causing or contributing to the intoxication of any person; (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) any statute, ordinance or regulation relating to the sale, gift, distribution, or use of alcoholic beverages." (Pl. Reply at 7.) Significantly, although the *Monticello* court found the broader, "in connection with" exclusion to be illusory, it went on to note later in the opinion that the *other* alcohol provision was *not* illusory. This provision, which the court referred to as the "dram shop" exclusion, is almost identical to the Nautilus exclusion quoted above. *See* 949 F.Supp. at 696-97, Therefore, *Monticello* actually supports Nautilus.

Unlike the broader exclusion in *Monticello*, which would bar virtually every claim, the exclusion here would not sweep all claims under its orbit. As Nautilus persuasively argues in its brief, there are several situations in which the exclusion would not apply:

> [I]t is easy to imagine situations in which Nautilus would defend a bodily injury claim -- even in light of the Assault and Battery Exclusion and Liquor Liability Exclusion. If, for example, a patron or other visiting person slipped and fell on the insured premises, the exclusions would not apply. If a bar stool collapsed beneath a patron, the exclusions would not apply.

(Pl. Repl. at 4.) We understand that Nautilus' president may have been expecting or hoping that the policy would be broader, but we are concerned about the incentives that would be created if a party can rely on vague assertions, made after the fact, to undo clear contractual language. Bosack states in his declaration that he was unaware of these exclusions. This statement is not clear. Why was he unaware? Was it because he did not bother to read the policy before signing it? He also states that he had a different understanding of the phrase "assault and battery," but he fails to explain what his understanding was or whether he ever mentioned this contrary understanding to Nautilus. Thus, even if we had authority to apply the "reasonable expectations" doctrine, we would be concerned about what the reasonable expectations would be and what

| STATEMENT |
|---|
| specific terms we would be required to fill in to the contract.<br>    For all the above reasons, we grant summary judgment in favor of Nautilus, finding that the policy does not cover the claims in the Bookman lawsuit and that Nautilus has no duty to defend or indemnify Squaw Bar, Inc. and Bryan Bosack. |